IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

_____

JAMES ALLEN FRYE, on behalf of  )
himself and all others          )
similarly situated,             )
                                )
    Plaintiffs,               )
                                )
v.                              )    No. <u>07-2708 Ma/P</u>
                                )
BAPTIST MEMORIAL HOSPITAL,      )
INC., d/b/a BAPTIST MEMORIAL    )
HOSPITAL-MEMPHIS, BAPTIST       )
MEMORIAL HOSPITAL-              )
COLLIERVILLE, and BAPTIST       )
MEMORIAL HOSPITAL FOR WOMEN,    )

    Defendant.

_____

**ORDER DENYING DEFENDANT'S MOTION FOR ORDER TO PLAINTIFFS TO CEASE AND DESIST UNAUTHORIZED COMMUNICATION TO PUTATIVE CLASS MEMBERS**
_____

Before the court by order of reference is defendant Baptist Memorial Hospital, Inc., d/b/a Baptist Memorial Hospital-Memphis, Baptist Memorial Hospital-Collierville, and Baptist Memorial Hospital for Women's ("Baptist") Motion For Order To Plaintiffs To Cease And Desist Unauthorized Communication To Putative Class Members.[1] (D.E. 14). Plaintiffs have filed a response in

---

[1] On April 17, 2008, the parties filed a Stipulation of Dismissal Without Prejudice of Plaintiff Clarence Moore and Certain Opt-Ins and Stipulation of Stay of Discovery. (D.E. 111). The stipulation provided, among other things, that the caption of the case should be modified to reflect that certain plaintiffs who did not work for Baptist should be dismissed without prejudice and that the defendant should be referred to as Baptist Memorial Hospital, Inc.,

opposition, and Baptist has filed a reply. For the reasons below, the motion is DENIED.

## I. BACKGROUND

This motion arises from a putative collective action filed by plaintiffs against Baptist. The plaintiffs are former hourly employees of Baptist and its corporate affiliates. Frye is a nurse who was employed by Baptist from 2004 until April 19, 2007. Baptist is a Tennessee hospital system with its primary place of business in Memphis, Tennessee. Plaintiffs allege that Baptist is the master payor for all employees of the Baptist Memorial Healthcare System.

Plaintiffs filed this collective action pursuant to Section 16(b) of the Fair Labor Standards Act ("FLSA") on November 2, 2007. 29 U.S.C. § 216(b). They argue that Baptist violated the FLSA, 29 U.S.C. § 201 et seq., by failing or refusing to pay overtime compensation for hours worked by hourly employees in excess of forty hours per week and by failing or refusing to pay straight time to hourly employees for all hours worked. Specifically, plaintiffs argue that as employees of Baptist they worked before and after their shifts and during their lunch periods, but that they were not compensated for this "off-the-clock" work. Plaintiffs seek certification of the suit as a collective action.

---

d/b/a Baptist Memorial Hospital–Memphis, Baptist Memorial Hospital–Collierville, and Baptist Memorial Hospital for Women.

-2-

On February 15, 2008, the plaintiffs filed their motion for conditional certification and notice to putative collective action members. As of the date of this order, over twenty individuals have filed consents to join Frye as plaintiffs in this action.

As part of an effort to contact putative collective action members and potential witnesses for this case, plaintiffs' counsel launched an internet website containing information about the case in August of 2007 and mailed letters to all registered nurses ("RNs") in Shelby County on January 4, 2008. See Baptist Memorial Health Care System Class Action Lawsuit, http://www.baptistovertime.com. In this motion, Baptist argues that the website posted by plaintiffs' counsel is misleading and violates Tennessee Rule of Professional Conduct ("TRPC") 7.2. Baptist also argues that the letter sent by plaintiffs' counsel to potential collective action members is a direct solicitation that violates TRPC 7.3. Baptist contends that plaintiffs' counsel did not file the website or a copy of the letter with the Tennessee Board of Professional Responsibility ("Board"), that the letter did not contain the words "This is an Advertisement" in conspicuous print on the outside envelope or at the beginning and end of the letter, and that the first sentence of the letter failed to state "If you have already hired or retained a lawyer in this matter, please disregard this message."

Baptist also asserts that the website contains misleading

statements. First, the website states that "nurses or hourly employees . . . are eligible to join the lawsuit" even though the law requires that employees must be similarly situated in order to join as plaintiffs in a collective action. Second, the website incorrectly states that the lawsuit is a "class action" instead of a collective action. Third, the website contains the following statement:

> . . . by participating in this lawsuit, **you will become protected by federal law** against any type of retaliation by your employer. However, if you do not participate in this action, or the other protected activities in this statute, you will obviously not be under the protection that federal wage laws provide to you for other actions you may take.

Baptist contends that this statement is misleading because it implies that employees who do not participate in the lawsuit are forfeiting the protection of federal law and, as a result, will suffer adverse consequences. Finally, Baptist generally asserts that, although the website was revised by plaintiffs' counsel after Baptist filed the present motion, the website continues to contain inaccurate and misleading statements. Baptist requests that the court order the plaintiffs to cease and desist communications with putative collective action members, including ordering the removal of the website and prohibiting plaintiffs' counsel from sending additional written correspondence to putative collective action members, until the court determines the pending motion for conditional certification. Baptist also seeks sanctions in the

form of attorney's fees and expenses.

In response, plaintiffs argue that the website and letter do not contain misleading or inaccurate information. Plaintiffs also assert that the letter does not fall under TRPC 7.3 because it was not significantly motivated by pecuniary gain. In addition, after plaintiffs' counsel was notified by Baptist of the alleged violations, he filed the letter and printouts of the website with the Board. Moreover, plaintiffs' counsel mailed a revised letter to the Shelby County RNs and revised the website to address the concerns raised in Baptist's motion. The changes plaintiffs made to the website include the following:

> (1) The sentence "nurses or hourly employees . . . are eligible to join" was revised to state that a nurse or hourly employee "may be eligible to join."
>
> (2) The website now states that plaintiffs' counsel represents hourly employees of "various hospitals and health care institutions associated with Baptist Memorial Health Care System. . . ."
>
> (3) A footnote was added to the website title, "Baptist Memorial Health Care System Class Action Litigation," stating that "Under Section 216(b) of the Fair Labor Standards Act a lawsuit for unpaid wages or overtime compensation is called a 'collective action' which is similar to but not identical to a 'class action' under Rule 23 of the Federal Rules of Civil

Procedure." The footnote also explains that individuals must opt in to a collective action.

(4) The paragraph regarding protection under federal law was revised to state "The Fair Labor Standards Act prohibits an employer from taking any retaliatory action against an employee for pursuing their rights for unpaid compensation. If the Court determines that an employer retaliates against an employee for pursuing rights protected by the FLSA the employee is entitled to either reinstatement, or the pay differential at a new job, double damages, and attorneys' fees. Should you feel you have suffered from any retaliation, contact us at once."

In addition, plaintiffs added language in several places on the website indicating that individuals may retain the attorney of their choice.

At the hearing on this motion, Baptist conceded that plaintiffs' counsel's revisions to the letter and website met its initial objections. Additionally, Baptist could not point to any harm that it suffered as a result of plaintiffs' counsel's communications with putative collective action members. Baptist continued to argue, however, that the court should nevertheless order plaintiffs and their counsel to cease communications with putative collective action members because such communications amounted to *de facto* notice and usurped the court's authority to

supervise notice in a collective action.

Plaintiffs informed the court that the Board, after receiving copies of the original letter and website, determined that the letter fell under TRPC 7.3 and directed plaintiffs' counsel to make certain revisions to the letter. Specifically, the Board informed plaintiffs' counsel that the letter must state "this is an advertisement" in prominent type, inform the recipients how plaintiffs' counsel obtained their names, and state that the recipient should disregard the letter if the recipient is already represented by an attorney. The Board instructed plaintiffs' counsel to provide the Board with a copy of the envelope, which must state "this is an advertisement" on the face of the envelope, and a list of the recipients' names and addresses. In compliance with the Board's instructions, plaintiffs' counsel made these revisions and mailed corrected letters on February 8, 2008.

## II. ANALYSIS

Section 216(b)[2] of the FLSA governs collective actions to

---

[2]Section 216(b) states in relevant part that

> Any employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimal wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages. . . . An Action to recover liability prescribed in either of the preceding sentences may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other

recover unpaid minimum wages and overtime compensation. 29 U.S.C. § 216(b). The FLSA provides that an employee may bring an action for himself and other employees "similarly situated." Id. Unlike class actions governed by Federal Rule of Civil Procedure 23, in which potential class members may choose to opt out of the action, FLSA collective actions require potential class members to notify the court of their desire to opt in to the action. See Thomas v. Speedway SuperAmerica, LLC, 506 F.3d 496, 501 (6th Cir. 2007).

Under the FLSA, a collective action for unpaid wages must be brought within two years after the alleged violation occurs unless the violation is willful, in which case the statute of limitations is three years. 29 U.S.C. § 255. An action is considered to be commenced, for statute of limitations purposes, either (1) when the complaint is filed, if the plaintiff is named in the complaint and filed a written consent to become a party at the time the complaint was filed; or (2) on the date a consent to become a party was filed, if the plaintiff was either unnamed in the complaint or failed to file a consent at the time the complaint was filed. 29

---

> employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought. The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action. . . .

29 U.S.C. § 216(b).

U.S.C. § 256(a); Piper v. RGIS Inventory Specialists, Inc., No. C-07-00032 (JCS), 2007 WL 1690887, at *6 (N.D. Cal. 2007). Courts generally allow opt-in plaintiffs to file consent forms at any time in the action, and may even look to these opt-in consents as evidence on the question of whether a collective action should be conditionally certified. Id. (citing cases).

In Gulf Oil, the Supreme Court recognized that although "[c]lass actions serve an important function in our system of civil justice," they also present "opportunities for abuse." Gulf Oil Co. v. Bernard, 452 U.S. 89, 99-100 n.10 (1981); see Hoffman-La Roche Inc. v. Sperling, 493 U.S. 165, 170-72 (1989) (applying Gulf Oil to collective actions). The potential abuses noted by the Court include "'heightened susceptibilities of nonparty class members to solicitation amounting to barratry as well as the increased opportunities of the parties and counsel to 'drum up' participation in the proceeding" and "'[u]napproved communications to class members that misrepresent the status or effect of the pending action.'" Gulf Oil, 452 U.S. at 101 (quoting Waldo v. Lakeshore Estates, Inc., 433 F. Supp. 782, 790 (E.D. La. 1977)).

Therefore, "a district court has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties. But this discretion is not unlimited." Id. at 100-01. Under Gulf Oil, "an order limiting communications between parties and

-9-

potential class members should be based on a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties." Id. at 101-02. Whereas specific findings of abuses may justify a ban on communications, the mere possibility of abuse does not justify "adoption of a communications ban that interferes with formation of a class or the prosecution of a class action in accordance with the Rules." Id. at 104. The court must ensure that a protective order is carefully drawn such that it avoids impinging upon the class members' constitutional rights of speech, association, and access to their counsel of choice. Id. at 102. Finally, Gulf Oil recognized that "in many cases there will be no problem [with communications to putative class members] requiring remedies at all." Id. at 104.

As discussed above, Baptist argues that plaintiffs' counsel's contact with putative collective action members through mass mailed letters and the website is *de facto* notice and usurps the court's authority to supervise the notice procedure in this collective action. Baptist relies heavily on Bouder v. Prudential Fin., Inc., No. 06-CV-4359 (DMC), 2007 WL 3396303 (D.N.J. Nov. 8, 2007), where the court required plaintiffs' counsel in a collective action "to cease and desist from their attempted notice and mass communications to putative plaintiffs." Id. at *3. Bouder, however, involved a letter and Consent to Sue form that the court

found "deceptive, misleading and contain[ed] numerous false statements." Id. Moreover, to the extent that Bouder can be read to stand for the proposition that a complete ban on pre-certification communications with potential class members is appropriate even in the absence of specific findings of abuse, such a rule would be entirely inconsistent with Gulf Oil. As one court has observed, "[t]he smattering of lower courts to have addressed the issue have taken a similar approach to that outlined in Gulf Oil: relying upon their broad case management discretion to generally allow pre-notice communications while actively limiting misleading statements in such communications." Maddox v. Knowledge Learning Corp., 499 F. Supp. 2d 1338, 1342-43 (N.D. Ga. Aug. 3, 2007) (holding that it would be an abuse of discretion to totally prohibit plaintiffs from communicating with putative collective action members through a website or other means); see also Rubery v. Buth-Na-Bodhaige, Inc., 514 F. Supp. 2d 431, 434 (W.D.N.Y. 2007) (holding that inaccuracies in a letter to putative collective action members could be remedied by issuing a corrective notice if class was later certified; court denied defendant's motion to strike consent forms filed by putative members prior to determination of certification); Piper, 2007 WL 1690887, at *8 (holding that the plaintiffs' inaccurate website needed to be updated but did not justify other limitations on communications with putative collective action members); Melendez Cintron v.

Hershey Puerto Rico, Inc., 363 F. Supp. 2d 10, 19 (D.P.R. 2005) (refusing to sanction plaintiffs for pre-certification letter to potential class members that did not make false representations and was not misleading). Cf. Alaniz v. Sam Kane Beef Processors, Inc., No. CC-07-335, 2007 WL 4290659, at *1 (S.D. Tex. Dec. 4, 2007) (issuing a temporary restraining order against plaintiffs for overbroad and misleading flyers, radio announcements, and billboards in collective action case); Jones v. Casey's Gen. Stores, 517 F. Supp. 2d 1080, 1089 (S.D. Iowa 2007) (barring plaintiffs' counsel from initiating contact with potential opt-in plaintiffs based on specific evidence that plaintiffs' *ex parte* communications with putative collective members violated ethical rules against solicitation; court declined to shut down plaintiffs' website but ordered plaintiffs to substantially modify website to address the court's concerns). As the court explained in Maddox,

> Courts have been mindful not to run afoul of plaintiffs' and their lawyers' free speech rights in their restrictions of pre-notice communications. "Although the court has broad authority to manage the collective action, the First Amendment requires the Court to tailor any restrictions on a party's ability to speak with absent class members." Belt v. Emcare Inc., 299 F. Supp. 2d 664, 667 (E.D. Tex. 2003). "Courts must base any order limiting communications between parties and potential class members on a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of parties." Id. The Constitution accords a lesser protection to commercial speech – such as communications to potential class members – than to other constitutionally guaranteed expression. Central Hudson Gas & Electric Corp. v. Public Service Commission of New York, 447 U.S. 557, 563 (1980). "In general, an order

-12-

> limiting communications regarding ongoing litigation between a class and class opponents will satisfy first amendment concerns if it is grounded in good cause and issued with a heightened sensitivity for First Amendment concerns." Kleiner v. First National Bank, 751 F.2d 1193, 1205 (11th Cir. 1985).

Id. at 1343.

In the present case, the court finds (as did the Board) that plaintiffs' counsel was required to comply with Rule 7.3 when he mailed the letters to the RNs, and that his failure to do so was in violation of this rule. Although one purpose of the letter may have been to locate potential witnesses, it is clear that a significant motive for the solicitation was for the lawyer's pecuniary gain. The letter states that "[i]f you would like to determine whether you can join the lawsuit, you need to contact our office immediately" and "[i]f you would like more information about the lawsuit including how **you can join**, you can visit **www.baptistovertime.com**." (emphasis in original). Additionally, had plaintiffs' counsel wanted to locate potential witnesses, his search would have been more logically and efficiently conducted by seeking discovery from Baptist rather than by sending a mass mailing to thousands of RNs.

The court concludes, however, that this violation does not justify a communications ban at this time. As discussed above, after plaintiffs' counsel was notified by the Board that his letter did not comply with Rule 7.3, he complied with the Board's instructions and mailed corrected versions of the letter to the

-13-

RNs.  In addition, plaintiffs' counsel revised his website to address the issues raised in Baptist's motion.  The letter and website, in their present form, do not contain deceptive or misleading statements, and plaintiffs' counsel's conduct does not otherwise support a communications ban.[3]

### III.  CONCLUSION

For the reasons above, the motion is DENIED.

IT IS SO ORDERED.

s/ Tu M. Pham

TU M. PHAM

United States Magistrate Judge

May 20, 2008

Date

---

[3] Plaintiffs' counsel shall ensure that, when referring to the present litigation, the website must state the correct name of the defendant and that the defendant denies the allegations in the complaint.

-14-